CHRISTOPHER M. MCDERMOTT (SBN 253411)
cmcdermott@aldridgepite.com
TODD S. GARAN (SBN 236878)
tgaran@aldridgepite.com
GREGORY P. CAMPBELL (SBN 281732)
gcampbell@aldridgepite.com
**ALDRIDGE PITE, LLP**
4375 Jutland Dr., Ste. 200
P.O. Box 19734
San Diego, CA 92177-9734
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for
CitiMortgage, Inc.

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>BRYAN KEITH GUTIERREZ,<br><br>Debtor. | Case No. 1:17-bk-11743-MB<br><br>Chapter 11<br><br>**STIPULATION REGARDING TREATMENT OF CLAIM UNDER DEBTOR'S PROPOSED CHAPTER 11 PLAN**<br><br>**SUBJECT PROPERTY:**<br><br>6903 Montego Street,<br>Chino CA 91710 |

This Stipulation is entered into by and between CitiMortgage, Inc. ("Citi"), by and through its attorneys of record, and Debtor, Bryan Keith Gutierrez ("Debtor"), by his attorney of record.

The property which is the subject of this matter is commonly known as 6903 Montego Street, Chino CA 91710 ("Property"), which is more fully described in the Deed of Trust. (*See* Exhibit A).

**RECITALS:**

On September 25, 2006, Debtor executed a promissory note in the principal sum of $106,100.00 (the "Note"). The Note is secured by a Deed of Trust (the "Deed of Trust") granting a security interest in the real Property. The Deed of Trust reflects that it was duly recorded. The Note and Deed of Trust are collectively referred to herein as the "Subject Loan".

On June 30, 2017, Debtor filed the instant Chapter 11 bankruptcy proceeding and was assigned bankruptcy case number 1:17-bk-11743-MB (the "<u>Bankruptcy Case</u>").[1] (*See* Dkt No. 1).

**THE PARTIES STIPULATE AS FOLLOWS:**

1.       Citi shall have an unsecured claim of $105,386.23, plus Citi's attorneys' fees and costs in the Debtor's Plan ("<u>Unsecured Claim</u>"). Citi shall be entitled to its pro rata share of the dividend issued to general unsecured creditors in the Debtor's Plan. Citi's lien related to its Unsecured Claim shall only be avoided upon completion of the Debtor's Chapter 11 Plan payments and the entry of a final decree. In the event Debtor proceeds with a post-confirmation sale or refinance of the Property prior to completion of the Plan, Citi may seek recovery of the full amount due under the Note. Citi shall not be required to release its lien until the Debtor has completed his Plan and the court has entered a final decree.

2.       Except as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Citi's Claim.

3.       The terms of this Stipulation are contingent upon the substantial consummation of the Debtor's confirmed Plan. The terms of this Stipulation shall be incorporated into any Amended Plan and/or the Order of Confirmation. In the event of any discrepancy between the terms of this Stipulation and the terms of the Debtor's Plan, the terms of this Stipulation shall control the treatment of Citi's Claim.

4.       In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code prior to completion of the Debtor's Chapter 11 Plan payments and entry of a final decree, the terms of this Stipulation shall be void and Citi shall retain its lien in the full amount due under the Note.

5.       In the event the Debtor seeks to sell the Property prior to completion of the Plan and entry of a final decree, the parties shall retain all rights under 11 U.S.C. §363.

6.       Citi shall not be required to release the loan from bankruptcy status and/or resume regular monthly statements until the close of the Debtor's Chapter 11 case.

---

[1] Debtor received a Chapter 7 discharge in prior Bankruptcy Case No. 12-bk-27734.

**STIPULATION RE TREATMENT OF CLAIM UNDER PROPOSED CHAPTER 11 PLAN**

7.    In the event the Debtor asserts that Citi has failed to properly update its internal system to comply with the terms of this Stipulation within a reasonable period of time after an order is entered confirming the Debtor's Chapter 11 Plan of Reorganization, which shall be no less than ninety (90) days, the Debtor shall be required to provide written notice of the alleged lack of compliance to Citi and Citi's counsel of record, Aldridge Pite, LLP at 4375 Jutland Drive, Suite 200, San Diego, CA 92117, indicating the nature of the alleged lack of compliance. If Citi fails to either remedy the alleged lack of compliance and/or provide an explanation refuting the Debtor's allegation after the passage of ninety (90) days from the date Citi receives said written notice (the "Meet and Confer Period") the Debtor may proceed with filing the appropriate motion in bankruptcy court seeking Citi's compliance.

8.    Citi shall cast a ballot accepting the Debtor's  proposed Chapter 11 Plan of Reorganization if such Plan and/or Order of Confirmation incorporates fully the terms of this Stipulation.

**IT IS SO STIPULATED**

LAW OFFICE OF CRYSTLE JANE LINDSEY

Dated: 06/26/2018

*Crystle Jane Lindsey*
CRYSTLE JANE LINDSEY
Attorney for Debtor

**ALDRIDGE PITE, LLP**

Dated:  6/26/18

/s/
GREGORY P. CAMPBELL
Attorneys for *Creditor*, CitiMortgage, Inc.

**STIPULATION RE TREATMENT OF CLAIM UNDER PROPOSED CHAPTER 11 PLAN**

# EXHIBIT A

Recorded in Official Records, County of San Bernardino

10/04/2006
8:00 AM
LM

**LARRY WALKER**
Auditor/Controller — Recorder

**605 Lawyers Title Company**

RECORDING REQUESTED BY
LAWYERS TITLE.

Return to:
AEGIS FUNDING CORPORATION
ATTENTION: Final Docs
P.O. BOX 421129
HOUSTON, TX 77242



| Titles: 1 | Pages: 22 |
|---|---|
| Fees | 71.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $71.00 |

———————————— [Space Above This Line For Recording Data] ————————————

Loan No:
Borrower: BRYAN GUTIERREZ

Data ID: 575

# DEED OF TRUST    MIN:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated September 25, 2006, together with all Riders to this document.

**(B) "Borrower"** is BRYAN GUTIERREZ , A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY . Borrower is the trustor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.

**(D) "Lender"** is AEGIS FUNDING CORPORATION. Lender is, a Corporation organized and existing under the laws of the State of DELAWARE. Lender's address is 3250 BRIARPARK DRIVE, SUITE 400, HOUSTON, TX 77042-4204.

**(E) "Trustee"** is KENNETH J. WELESKI.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                    2/06    (Page 1 of 19 Pages)

(F) **"Note"** means the promissory note signed by Borrower and dated September 25, 2006. The Note states that Borrower owes Lender **ONE HUNDRED SIX THOUSAND ONE HUNDRED and NO/100-----Dollars (U.S. $ 106,100.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2036.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:
PUD Rider attached hereto.

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners' association, or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, that is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes without limitation point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                                    2/06    *(Page 2 of 19 Pages)*

EXHIBIT A

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of SAN BERNARDINO:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

## SEE EXHIBIT "A"

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                                    2/06    *(Page 3 of 19 Pages)*

EXHIBIT A

which currently has the address of 6903 MONTEGO STREET,

[Street]

CHINO, CALIFORNIA                                           91710          ("Property Address"):
[City]                                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and
additions also shall be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal
title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with
law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to
exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing and
canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and
has the right to grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against
all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering
real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
    1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower also shall pay funds for Escrow
Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made
in U.S. currency. However, if any check or other instrument received by Lender as payment under the
Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all
subsequent payments due under the Note and this Security Instrument be made in one or more of the
following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose
deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

EXHIBIT A

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payment is insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payment at the time such payment is accepted. If each Periodic Payment is applied as of its scheduled due date, Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim that Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and, finally, to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment that includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date or change the amount of the Periodic Payments.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                    2/06      *(Page 5 of 19 Pages)*

EXHIBIT A

**3. Funds for Escrow Items.** Unless waived in writing by Lender or prohibited by Applicable Law, Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items that may attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower promptly shall furnish to Lender all notices of amounts to be paid under this Section 3. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds and in such amounts that are then required under this Section 3.

Lender at any time may collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (b) not to exceed the maximum amount a lender may require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna          2/06     (Page 6 of 19 Pages)

EXHIBIT A

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien that has priority over this Security Instrument, including without limitation Borrower's covenants to make payments when due.

Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property that may attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien not approved by Lender that has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings that in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

To the extent permitted by Applicable Law, Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Loan.

EXHIBIT A

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including without limitation earthquakes and floods for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences may change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. To the extent permitted by Applicable Law, Lender may require Borrower to pay in connection with this Loan either: (a) a one-time charge for flood zone determination, certification, and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might affect such determination or certification. To the extent permitted by Applicable Law, Borrower also shall be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable with such interest upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower promptly shall give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

EXHIBIT A

In the event of loss, Borrower shall give prompt notice to the insurance carrier and, in the manner required by Section 14, Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period shall begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                                    2/06    *(Page 9 of 19 Pages)*

**7. Preservation, Maintenance, and Protection of the Property; Inspections.** Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower promptly shall repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to or the taking of the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include without limitation representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that significantly might affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including without limitation protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include without limitation: (a) paying any sums secured by a lien that has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect Lender's interest in the Property and/or rights under this Security Instrument, including without limitation Lender's secured position in a bankruptcy proceeding. Securing the Property includes without limitation entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. Borrower and Lender agree that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable with such interest upon notice from Lender to Borrower requesting payment.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                                         2/06    *(Page 10 of 19 Pages)*

EXHIBIT A

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds hereby are assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                                    2/06    (Page 11 of 19 Pages)

EXHIBIT A

If the Property is abandoned by Borrower, or, if after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if, any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower may cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property hereby are assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy, including without limitation Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant, and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing and is approved by Lender shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                                    2/06    (Page 12 of 19 Pages)

EXHIBIT A

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including without limitation attorneys' fees, property inspection fees, and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law that sets maximum loan charges and that law finally is interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits shall be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (regardless of whether the Note provides for a prepayment charge). Borrower's acceptance of any such refund made by direct payment to Borrower shall constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail, when actually delivered to Borrower's notice address if sent by other means, or when given to Borrower by any other means required by Applicable Law. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, Borrower shall report a change of address only through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement shall satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note that may be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                    2/06    *(Page 13 of 19 Pages)*

EXHIBIT A

**16.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

**17.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including without limitation those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of any of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration in accordance with Section 14.  The notice shall provide a date by which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums on or before that date, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) to the extent permitted by Applicable Law, pays all expenses incurred in enforcing this Security Instrument, including without limitation reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender reasonably may require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 17.

EXHIBIT A

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower shall be given written notice of the change that will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower shall remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period that must elapse before certain action may be taken, that time period shall be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do or allow anyone else to do anything affecting the Property (a) that is in violation of any Environmental Law, (b) that creates an Environmental Condition, or (c) that, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that generally are recognized to be appropriate to normal residential uses and to maintenance of the Property (including without limitation Hazardous Substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including without limitation any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

21. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement that Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims, or defenses that Borrower may have against parties who supply labor, materials, or services in connection with any improvements made to the Property.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.  Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender to the extent permitted by Applicable Law shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including without limitation reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee without demand on Borrower shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including without limitation reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                    2/06    *(Page 16 of 19 Pages)*

EXHIBIT A

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted by Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor Trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee, and Borrower, the book and page where this Security Instrument is recorded, and the name and address of the successor Trustee. Without conveyance of the Property, the successor Trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**26. Insurance Proceeds.** Borrower agrees to generally assign to the holder of the Note rights to any insurance proceeds referenced in Section 5 up to the amount of the outstanding balance of the Loan. Borrower agrees to assign such insurance proceeds regardless of whether Lender required the insurance coverage.

**27. Transfer of the Property or a Beneficial Interest in Borrower.** The last paragraph of Section 17 hereby is deleted in its entirety; in all other respects, Section 17 shall remain in effect unchanged.

**28. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The last sentence of the last paragraph of Section 19 hereby is deleted; in all other respects, Section 19 shall remain in effect unchanged.

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                    2/06    *(Page 17 of 19 Pages)*

EXHIBIT A

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

.......................................................................................(Seal)
BRYAN GUTIERREZ —Borrower

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                                    2/06    *(Page 18 of 19 Pages)*

EXHIBIT A

─────────────────────── [Space Below This Line For Acknowledgment] ───────────────────────

State of  CALIFORNIA                                              §
County of  *SAN BERNARDINO*                                       §

On *SEPTEMBER 26*, 20 *06*, before me, _L. E. RUDZINSKI - NOTARY PUBLIC_____, a Notary Public,
personally appeared
**BRYAN GUTIERREZ**
☐ personally known to me
**OR**
☒ proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within instrument and acknowledged to me that he
executed the same in his authorized capacity, and that by his signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

```
┌─────────────────────────┐
│     L. E. RUDZINSKI     │
│     COMM. # 1636426     │
│ NOTARY PUBLIC - CALIFORNIA │
│     ORANGE COUNTY       │
│ COMM. EXPIRES JAN. 10, 2010 │
└─────────────────────────┘
```
[Seal]

_____
                                    Notary Public

L. E. RUDZINSKI - NOTARY PUBLIC
_____
                                    (Printed Name)

My commission expires: *1/10/10*_____

**CALIFORNIA SECURITY INSTRUMENT (Second Lien-Non-Assumable)**
© 2006 Middleberg, Riddle & Gianna                              2/06      *(Page 19 of 19 Pages)*

# EXHIBIT A

Borrower:   BRYAN GUTIERREZ

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 25th day of September, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to AEGIS FUNDING CORPORATION ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

6903 MONTEGO STREET
CHINO, CALIFORNIA  91710
[Property Address]

The Property includes without limitation a parcel of land improved with a dwelling together with other such parcels and certain common areas and facilities described in:

DECLARATIONS AND COVENANTS

("Declaration").   The Property is a part of a planned unit development known as:

6903 MONTEGO STREET
[Name of Planned Unit Development]

("PUD").  The Property also includes Borrower's interest in the homeowners association or other entity owning or managing the common areas and facilities of the PUD ("Owners Association") and the uses, proceeds and benefits of Borrower's interest.

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  PUD Obligations.**  Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents.  The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument, or any equivalent document that creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association.  Borrower promptly shall pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B.  Property Insurance.**  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy ("Master Policy") on the PUD that is satisfactory to Lender and that provides insurance coverage acceptable to Lender in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including without limitation earthquakes and floods, for which Lender requires insurance, then (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property shall be deemed satisfied to the extent that the required coverage is provided by the Master Policy.

What Lender requires as a condition of this waiver may change during the term of the Loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the Master Policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property or the common areas and facilities of the PUD, any proceeds payable to Borrower hereby are assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take reasonable action to insure that the Owners Association maintains a public liability insurance policy ("Public Liability Policy") acceptable to Lender in form, amount, and extent of coverage.

**D. Condemnation.** The Miscellaneous Proceeds, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, hereby are assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

**E. Lender's Prior Consent.** Unless Lender consents in writing, Borrower shall not partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by Applicable Law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision expressly benefits Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action that would have the effect of rendering the coverage provided by the Public Liability Policy unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree in writing to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

All capitalized terms in this Planned Unit Development Rider shall have the same meaning as given in the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Planned Unit Development Rider.

..........................................................................................(Seal)
BRYAN GUTIERREZ —Borrower

MULTISTATE PLANNED UNIT DEVELOPMENT RIDER (SECOND LIEN)                    4/05
© 2006 Middleberg Riddle & Gianna                                    *(Page 2 of 2 Pages)*

EXHIBIT A

Borrower:  BRYAN GUTIERREZ

## LEGAL DESCRIPTION

Provide legal description here. Attach to the document to be recorded and file as one instrument.

## EXHIBIT "A"

All that certain real property situated in the County of San Bernardino, State of California, described as follows:

PARCEL 1:

LOT 8 OF TRACT MAP NO. 16953, IN THE CITY OF CHINO, AS PER MAP FILED IN BOOK 317, PAGES 90 TO 95 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT, IN COMMON WITH OTHER OWNERS, FOR INGRESS, EGRESS, USE AND ENJOYMENT OVER, IN, TO AND THROUGHOUT THE COMMUNITY ASSOCIATION PROPERTY DESCRIBED IN THE COMMUNITY DECLARATION, SUBJECT TO THE LIMITATIONS SET FORTH THEREIN, WHICH EASEMENT IS APPURTENANT TO THE RESIDENTIAL LOT DESCRIBED ABOVE.

PARCEL 3:

A NON-EXCLUSIVE EASEMENT, IN COMMON WITH OTHER OWNERS, FOR INGRESS, EGRESS, USE AND ENJOYMENT, OVER, IN, TO AND THROUGHOUT THE ASSOCIATION PROPERTY DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS OF THE ARNEL MAINTENANCE ASSOCIATION RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY ON JULY 31, 2006 AS DOCUMENT NO. 2006-0516626 OF OFFICIAL RECORDS, SUBJECT TO THE LIMITATIONS SET FORTH THEREIN, WHICH EASEMENT IS APPURTENANT TO THE RESIDENTIAL LOT DESCRIBED ABOVE.

PARCEL 4:

A NON-EXCLUSIVE EASEMENT ON OVER, THROUGH, UNDER AND ACROSS LOTS AA TO JJ INCLUSIVE OF THE MAP, FOR THE PURPOSES OF PERFORMING ITS OBLIGATIONS IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THE COMMUNITY DECLARATION.  ALL DEFINED TERMS USED HEREIN SHALL HAVE THE MEANINGS SET FORTH IN THE COMMUNITY DECLARATION RECORDED JULY 31, 2006 AS INSTRUMENT NO. 2006-0516626 OF OFFICIAL RECORDS.

Assessor's Parcel Number:

*(Page 1 of 1 Pages)*



EXHIBIT A

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4375 Jutland Drive/Suite 200/P.O. BOX 17933/San Diego, CA 92177

A true and correct copy of the foregoing document entitled (*specify*): __Stipulation Regarding Treatment of Claim Under__ __Debtor's Proposed Chapter 11 Plan__

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/26/2018____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

    United States Trustee: ustpregion16.wh.ecf@usdoj.gov
    Attorney for U.S. Trustee: S Margaux Ross, margaux.ross@usdoj.gov
    Attorney for Debtor: Crystele Jane Lindsey, crystle@cjllaw.com; W Sloan Youkstetter,
    lawofficeofwilliamsyoukstetter@gmail.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 06/26/2018____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Judge Barash                       DEBTOR
Suite 342, Courtroom 303                      Bryan Keith Gutierrez
21041 Burbank Boulevard                       18424 Collins Street
Woodland Hills, CA 91367                      Tarzana, CA 91356

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/26/2018 | Esteban Garcia | /s/ Esteban Garcia |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**